**HANLON, Admr., Appellant,**

v.

**LANE; East Ohio Gas Company, Appellee.**

[Cite as *Hanlon v. Lane* (1994), 98 Ohio App.3d 148.]

Court of Appeals of Ohio,
Summit County.

No. 16697.

Decided Oct. 19, 1994.

William T. Whittaker, Jr. and Paul F. Adamson, for appellant.

Dennis M. Pilawa and Charles Pierson, for appellee.

REECE, Presiding Judge.

Appellant, Dee Hanlon, as administrator of the estate of Donna Gaskins, appeals from the trial court's entry of summary judgment in favor of appellee, East Ohio Gas Company ("East Ohio"), on the estate's wrongful death claim for the negligent failure to warn of the danger of carbon monoxide poisoning from the use of natural gas. We affirm.

Anna Lane owns a house in Akron, Ohio. Anna's son, John Lane, lived in the house with Anna. On February 5, 1990, Donna Gaskins, John's friend, spent the night at the Lane house. Sometime during that overnight stay, John and Donna died from asphyxiation by a lethal level of carbon monoxide, an odorless, colorless, and toxic gas.

On February 6, an investigation revealed that the carbon monoxide had been generated by a natural gas furnace in the basement of the Lane house. Apparently, the flue that vented the exhaust fumes from the furnace to the chimney was blocked at the chimney end by dead-bird remains and brick and mortar debris from the inside of the chimney. According to deposition testimony, the blockage prevented proper venting of the exhaust fumes, described as a "dumping of fumes at the draft hood." This dumping of fumes resulted in the exhaust fumes' spilling back into the basement and spreading throughout the house. As the furnace operated, the dumping of the fumes also affected the air-gas mixture in the furnace, causing incomplete combustion of the natural gas. The incom-

plete combustion of the natural gas produced carbon monoxide, which spread throughout the house, eventually asphyxiating John Lane and Donna Gaskins.

In addition to the blocked flue, the investigators documented a buildup of black carbon soot around the heating vents, on the walls, and on the ceilings of the first and second floors of the house. Based on the accumulation of the carbon soot, one investigator estimated that the soot had been there for at least a month. The investigators also noted the strong, pungent odor of aldehydes, a byproduct of the improper burning of natural gas. This odor was discernible from outside the house.

Appellant brought wrongful death claims against Anna Lane and East Ohio. The claim against East Ohio alleged that East Ohio was negligent in failing to warn its customers about the danger of carbon monoxide poisoning from the use of natural gas. East Ohio moved for summary judgment. The trial court granted East Ohio summary judgment and found that there was no just reason to delay an appeal. Appellant raises as her single assignment of error the trial court's entry of summary judgment in favor of East Ohio.

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard as the trial court under Civ.R. 56(C). *Varisco v. Varisco* (1993), 91 Ohio App.3d 542, 545, 632 N.E.2d 1341, 1343. That standard requires the court to view the evidence most strongly in favor of the nonmoving party and decide whether genuine issues of material fact remain for trial. *Id.* If, after undertaking this review, the evidence is such that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

As a general rule, a natural gas company does not have a duty to know what gas appliances its customers have installed or to inspect those appliances. *Smith v. Cincinnati Gas & Elec. Co.* (1991), 75 Ohio App.3d 567, 569, 600 N.E.2d 325, 327. However, a duty on the part of a gas company may arise if the company is aware or should have been aware of a dangerous condition with respect to one of its customers' appliances. *Perry v. E. Ohio Gas Co.* (App.1960), 82 Ohio Law Abs. 584, 590, 164 N.E.2d 774, 779; *Donoughe v. E. Ohio Gas Co.* (1950), 89 Ohio App. 411, 421, 46 O.O. 244, 248, 102 N.E.2d 881, 887. Thus, a gas company may have a duty to warn a customer about a dangerous appliance or a dangerous condition posed by the use of an appliance if the company has inspected the dangerous appliance or otherwise has notice of the dangerous condition. See *Cyrus v. Henes* (Dec. 26, 1991), Lorain App. No. 91CA005074,

unreported, 1991 WL 284190. Absent this notice, a gas company does not have a duty to warn a customer about a dangerous appliance or a dangerous condition posed by the use of an appliance.

■ Appellant makes no contention that East Ohio was aware or should have been aware that Anna Lane's furnace was improperly vented. Moreover, our review of the record reveals no evidence that would support such a conclusion. Accordingly, because nothing in the record indicates that East Ohio had notice of the dangerous condition posed by the use of Anna Lane's furnace, East Ohio did not have a duty to warn of that specific danger.

■ Nevertheless, appellant argues that East Ohio had a duty to warn its customers about the general danger of carbon monoxide poisoning from the use of natural gas. Appellant additionally argues that East Ohio had a duty to inform its customers about warning signs that could indicate the presence of a dangerous level of carbon monoxide.[1] East Ohio contends that the danger of carbon monoxide poisoning from the use of an improperly vented gas furnace is a matter of common knowledge and an open and obvious danger. East Ohio, therefore, argues that it cannot be held liable for the negligent failure to warn because, as a matter of law, a manufacturer does not have a duty to warn its customers about an open and obvious danger. After reviewing Ohio's products liability law, we agree with East Ohio that, under these circumstances, it did not have a duty to warn.

■ In order to recover in a products liability action based on the negligent failure to warn, the plaintiff must show that the manufacturer had a duty to warn, that the duty was breached, and that the plaintiff's injury proximately resulted from that breach of duty. See *Freas v. Prater Constr. Corp., Inc.* (1991), 60 Ohio St.3d 6, 8–9, 573 N.E.2d 27, 29–31. Accordingly, a manufacturer cannot be held liable for the negligent failure to warn unless the plaintiff first establishes that the manufacturer had a duty to warn. To determine whether a manufacturer had a duty to warn, Ohio courts follow the principles set forth in Section 388 and Section 402A of 2 Restatement of the Law 2d, Torts (1965) 300–310, 347–358, and the statutory authority set forth in Ohio's products liability Act, R.C. 2307.71 to

---

1. Appellant identifies two types of warning signs, which for our purposes can be categorized as either environmental or physiological. The environmental warning signs include the accumulation of black carbon soot and dark cobwebs near heating ducts and vents. The physiological warning signs include watery eyes, headaches, burning sensations in the throat and nose, dizziness, nausea, and flu-like symptoms. East Ohio agrees that these warning signs may appear if a dangerous level of carbon monoxide is present in a living area.

2307.80.[2]

 In *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 256–257, 556 N.E.2d 1177, 1181–1183, the Ohio Supreme Court determined that the duty imposed upon a manufacturer in a strict liability action for failure to warn is the same as that imposed upon the manufacturer in a negligence action for failure to warn. See, also, *Steinke v. Koch Fuels, Inc.* (1992), 78 Ohio App.3d 791, 794, 605 N.E.2d 1341, 1343. As a result, the principles set forth in Section 388 (negligence) and Section 402A (strict liability) apply equally to the determination of whether a manufacturer has a duty to warn. See *Freas,* 60 Ohio St.3d at 9, 573 N.E.2d at 30.

Under Section 388, a manufacturer is subject to liability for the negligent failure to warn if the manufacturer:

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (Emphasis added.) 2 Restatement of the Law 2d, Torts, at 301.

Although written in the negative, subsection (b) clearly stands for the proposition that if a manufacturer has reason to believe that consumers will realize the danger involved in using a product, then the manufacturer does not have a duty to warn of that danger. See *id.* at 306–307, Comment *k.* To this end, Ohio's appellate courts have determined that if a product's danger is a matter of common knowledge or if the danger is open and obvious to the user of the product, then the manufacturer has reason to believe that the consumer will realize the product's danger and a duty to warn will not arise. See, *e.g., Koepke v. Crosman Arms Co.* (1989), 65 Ohio App.3d 1, 3, 582 N.E.2d 1000, 1001; *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App.3d 62, 63, 520 N.E.2d 1375, 1376. See, also, *Sams v. Englewood Ready–Mix Corp.* (1969), 22 Ohio App.2d 168, 170–171, 51 O.O.2d 315, 316–317, 259 N.E.2d 507, 508–509. Thus, under Section 388, a manufacturer does not have a duty to warn of a product's danger if that danger is a matter of common knowledge or open and obvious to the user of the product.

A review of Section 402A leads to a similar result. Pursuant to Comments *i* and *j* of that section, a manufacturer does not have a duty to warn consumers of a

---

**2.** Parenthetically, we note that East Ohio meets the broad definition of "manufacturer" contained in R.C. 2307.71(I). See, also, R.C. 2307.71(L)(1). Since neither party raised this as an issue, we presume that they concur in this conclusion.

danger inherent in the use of the manufacturer's product if that danger is generally known and recognized by the ordinary consumer or within the body of knowledge common to the community. 2 Restatement of the Law 2d, Torts, at 352–353; *Sapp v. Stoney Ridge Truck Tire* (1993), 86 Ohio App.3d 85, 98–99, 619 N.E.2d 1172, 1180–1181; *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 163, 644 N.E.2d 731, 733. Moreover, Ohio has codified the principles set forth in Section 388 and Section 402A in R.C. 2307.76(B):

"A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge."

 Taken together, the above authorities clearly preclude a manufacturer from being liable for the negligent failure to warn of a product's danger if that danger is open and obvious to the user of the product or a matter of common knowledge.

In granting summary judgment to East Ohio, the trial court cited approvingly *Beans v. Entex, Inc.* (Tex.App.1988), 744 S.W.2d 323, in which the Texas Court of Appeals dealt with facts similar to those in this case. In *Beans,* the plaintiff's father went to sleep after turning on an unvented natural-gas-fired space heater. The father was found dead the next morning, having been asphyxiated by the carbon monoxide emissions from the space heater. The plaintiff brought a wrongful death action against Entex, Inc., a natural gas company, claiming that Entex had failed "to warn of the potentially life-threatening consequences of using an unvented gas heater." *Id.* at 325. The trial court granted Entex summary judgment and the plaintiff appealed. The court of appeals affirmed, holding that in the absence of notice of the dangerous condition, Entex did not have a duty to warn, since "[a]sphyxiation, due to carbon monoxide inhalation from unvented gas heating, is of such common propensity as to be an open and obvious danger." *Id.* See, also, *Ortiz v. Gas Co. of New Mexico* (App.1981), 97 N.M. 81, 636 P.2d 900.

We agree with reasoning in *Beans.* It is a matter of common knowledge that carbon monoxide is a toxic, and potentially lethal, odorless and colorless gas. It is also common knowledge that a gas furnace produces exhaust fumes that must be vented in order for the furnace to be operated safely. Moreover, it is generally known and recognized by the ordinary consumer that an improperly vented gas furnace may expel exhaust fumes, including carbon monoxide, into living areas. In light of this common body of knowledge, we find that the danger of carbon monoxide poisoning from the use of an improperly vented gas furnace is an open and obvious danger as a matter of law. Consequently, the trial court

did not err in finding that East Ohio does not have a duty to warn its customers about the danger of carbon monoxide poisoning from the use of natural gas.

Since East Ohio does not have a duty to warn its customers about the general danger of carbon monoxide poisoning, it follows that East Ohio does not have a duty to inform its customers about specific warning signs associated with that danger. Accordingly, the appellant's assignment of error is overruled, and the trial court's entry of summary judgment is affirmed.

*Judgment affirmed.*

QUILLIN and DICKINSON, JJ., concur.