**Beverly M. FISHER, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

No. 3:97CV7070.

United States District Court,
N.D. Ohio,
Western Division.

June 29, 1998.

---

Dennis R. Lansdowne, Spangenberg, Shibley, Lancione & Liber, Cleveland, OH, William M. Connelly, Steven P. Collier, Connelly, Soutar & Jackson, Toledo, OH, for Plaintiffs.

Elizabeth B. Wright, Dena Marie Kobasic, Thompson, Hine & Flory, Cleveland, OH, Matthew R. Rogers, Pillsbury, Madison & Sutro, Los Angeles, CA, for Defendant.

 Order

CARR, District Judge.

This is a products liability case in which plaintiffs claim that defendant manufactured and sold a defective air bag and failed to warn about its dangerousness. Because the parties are diverse and the amount in controversy exceeds $75,000, this court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending is defendant's motion for summary judgment. (Doc. 42). For the following reasons, defendant's motion shall be granted in part and denied in part.

## Background

On November 29, 1996, plaintiff Beverly Fisher was driving southbound on Holland–Sylvania Road in Sylvania, Ohio, in her 1996 Mercury Sable. When she reached the intersection of Holland–Sylvania Road and Sylvania Road, Mrs. Fisher began to make a left turn onto eastbound Sylvania Road. As she did so, she was struck by a northbound vehicle that had the right-of-way. On impact, the driver-side air bag in Mrs. Fisher's car deployed with such force that she sustained a skull fracture and brain hemorrhage, a broken arm and a bruised knee. Mrs. Fisher claims that she still suffers from extremely diminished balance and cognitive defects including loss of memory as a result of her brain hemorrhage.

Plaintiffs allege that, at the time that the air bag deployed, Mrs. Fisher was seated in her normal driving position, one half-inch back from the full forward position on the seat track. For people seated in this position, they claim, the defendant's air bag poses an unreasonable risk of injury.

Plaintiffs filed suit in this court on January 8, 1997. Their complaint alleges that (1) the air bag warnings in defendant's 1996 Mercury Sable were inadequate to warn plaintiffs of the dangerousness of the air bag system to short-statured people and (2) the air bag system was defective.

## Discussion

### A. Inadequate Warning Claim

Plaintiffs claim that defendant failed adequately to warn Mrs. Fisher about the risk

associated with the Mercury's air bag system. Specifically, they allege that the sun visor warning label was inadequate to alert Mrs. Fisher to the danger of sitting too close to the steering wheel, because of both its language and its placement. Defendant contends that plaintiffs' failure to warn claim is preempted, either expressly or impliedly, by Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208.S4.5.1 (FMVSS 208), promulgated pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* (Safety Act).[1]

Pursuant to the Supremacy Clause of the United States Constitution, any conflict between federal and state law must be resolved in favor of federal law. *See* Const. art. VI, cl.2. There are three ways in which state law can be preempted under the Supremacy Clause. First, Congress can expressly state that its enactments are intended to preempt state law. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Second, state law can be impliedly preempted where "it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Third, preemption may be implied where state law conflicts with federal law, either because compliance with both is impossible or because state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *International Paper Co. v. Ouellette,* 479 U.S. 481, 494, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987) (*quoting Hines v. Davidowitz,* 312 U.S. 52, 57, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

### 1. Express Preemption

Defendant first claims that plaintiffs' state law claim of inadequate warning is expressly preempted by the Safety Act and FMVSS 208. I disagree.

49 U.S.C. § 30103(b)(1) provides:

When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.[2]

Clearly this provision was meant to preempt all nonidentical safety standards promulgated by a state concerning an aspect of performance or equipment that is regulated under the Safety Act. The parties disagree, however, as to whether Congress intended that, by virtue of § 30103(b)(1), state tort claims also be precluded.

Defendant argues that permitting plaintiffs' inadequate warning claim would constitute the setting of a state standard and, therefore, is within the ambit of § 30103(b)(1). Plaintiffs argue, on the other hand, that state tort damage actions are not state "safety standards" and, thus, are still viable.

The parties also disagree on the import of the Safety Act's savings clause, 49 U.S.C. § 30103(e),[3] which provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." Defendant explains this provision as meaning only that Congress did not intend to occupy absolutely the entire field of motor vehicle safety. Plaintiff, on the other hand, contends that § 30103(e) was meant to preserve common law actions, despite broad federal regulation, in cases like this one.

Several courts have adopted defendant's view, holding that the Safety Act preempts state law actions for failure to install air bags or other safety devices, and that the savings clause is insufficient to preserve those actions. *See, e.g., Gracia v. Volvo Europa*

---

**1.** The Safety Act was formerly codified at 15 U.S.C. § 1381 *et seq.,* but in 1994 was recodified without substantial change as part of Title 49.

**2.** This provision was formerly codified as 15 U.S.C. § 1392(d).

**3.** This provision was formerly codified as 15 U.S.C. § 1397(k).

*Truck, N.V.*, 112 F.3d 291, 297 (7th Cir.1997); *Harris By and Through Harris v. Ford Motor Co.*, 110 F.3d 1410, 1415 (9th Cir.1997); *Johnson v. General Motors Corp.*, 889 F.Supp. 451, 459–60 (W.D.Okl.1995); *Zimmerman v. Volkswagen of Am., Inc.*, 128 Idaho 851, 920 P.2d 67, 72 (1996); *Martinez v. Ford Motor Co.*, 224 Mich.App. 247, 568 N.W.2d 396, 398–99 (1997); *Panarites v. Williams*, 216 A.D.2d 874, 629 N.Y.S.2d 359, 360 (N.Y.App.Div.1995).

The Northern District of Ohio, *Baird v. General Motors Corp.*, 654 F.Supp. 28, 31 (N.D.Ohio 1986), the Ohio Supreme Court, *Minton v. Honda of American Mfg.*, 80 Ohio St.3d 62, 72, 684 N.E.2d 648 (1997), and many other courts, *see, e.g., Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1120–21 (3d Cir.1990); *Taylor v. General Motors Corp.*, 875 F.2d 816, 825 (11th Cir.1989); *Wood v. General Motors Corp.*, 865 F.2d 395, 402 (1st Cir.1988); *Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1453 (S.D.Tex.1996); *Munroe v. Galati*, 189 Ariz. 113, 938 P.2d 1114, 1120 (1997); *Wilson v. Pleasant*, 660 N.E.2d 327, 330 (Ind.1995); *Tebbetts v. Ford Motor Co.*, 140 N.H. 203, 665 A.2d 345, 347 (1995), have held that the Safety Act does not expressly preempt state law product liability claims, however, either because such claims are not safety standards or because of the savings clause, or both.

■ The Ohio Supreme Court's holding in *Minton* is particularly instructive in this diversity case. In *Minton*, the plaintiff brought a products liability claim based on defendant's failure to install air bags in its cars. Defendant argued, among other things, that the Safety Act expressly preempted this cause of action, claiming that it amounted to a state safety standard because it required manufacturers to install air bags, rather than seat belts, in all cars. In an exhaustive review of case law and other authorities, the Court held that, absent any specific reference to preemption of state tort damage actions in the Safety Act, the plaintiff's claim was not expressly preempted:

> "[T]here is no indication that Congress considered a common law damages action to fall within the meaning of the term 'safety standard' as used in the Safety Act's preemption provision. On its face, the preemption provision by its own terms merely appears to preclude the state legislatures and other state rule-making bodies from mandating vehicle equipment or performance standards not identical to promulgated federal safety standards ... [Further], one must construe express preemption provisions in light of the presumption against the preemption of state police power. This presumption reinforces the necessity of a narrow reading of § 1392(d) ... [Moreover], there is no general, inherent conflict between federal preemption of state mandated vehicle safety standards and the continued vitality of state common law damages actions ...."

80 Ohio St.3d at 72, 684 N.E.2d 648 (*quoting* Chadwell, Automobile Passive Restraint Claims Post–Cipollone: An End to the Federal Preemption Defendant, 46 Baylor L.Rev. 141, 176–77 (1994)). *Accord Baird*, 654 F.Supp. at 30–31 ("statutory language does not ... directly address the state common law, and thus does not provide for express preemption of state common law claims").

Further, the *Minton* court pointed out, the legislative history of § 30103(e) of the Safety Act indicates that Congress was concerned with preserving common law actions. 80 Ohio St.3d at 73, 684 N.E.2d 648 (Safety "Act's legislative history confirms that the savings clause was intended by Congress to preserve state law remedies for injuries occurring as a result of defective automobiles") (*citing* S.Rep. No. 1301, 89th Cong., 2d Sess. 12, reprinted in 1966 U.S.Code Cong. & Adm. News 2709, 2720 ("[f]ederal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law") and H.R. Rep. 1776, 89th Cong.2d Sess. 24 (1996) (Congress "intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability")). *Accord Baird*, 654 F.Supp. at 30 (inclusion in

Safety Act of language continuing common law liability suggests that preemption should be narrow).

Section § 30103(b)(1) of the Safety Act does not explicitly discuss state law causes of action, while § 30103(e) appears to reserve to plaintiffs their rights to sue under such causes of action. Accordingly, I find that plaintiffs' state law failure-to-warn claim is not expressly preempted by federal law.

### 2. Implied Preemption

As stated above, state law may be impliedly preempted by field preemption or by conflict preemption. Defendant admits that the Safety Act was not intended by Congress to preempt the entire field of motor vehicle safety. Therefore, I need only address conflict preemption.[4]

Defendant argues that there is a conflict between FMVSS 208 and the state law standard that plaintiffs seek to impose because (1) it would have been impossible for defendant to both comply with FMVSS 208 and provide different or additional warnings on the sun visor and (2) it would have frustrated federal policy to have provided different or additional warnings elsewhere in the car. I agree with defendant to a certain extent.

FMVSS 208 and amendments thereto require manufacturers of vehicles made after September 1, 1994, to provide warning labels in vehicles that have air bag restraint systems. These regulations specify that the air bag warning must be placed in a specific location. Manufacturers are required to affix a warning label to either side, but not both sides, of each sun visor that is above a seat with an air bag restraint. They are also required to include warning information in owner manuals.

The regulations also require that manufacturers' air bag warnings be consistent in their content. Thus, pursuant to 58 Fed. Reg. 46561, 46564 (Sept. 2, 1993), the sun visor air bag warning must read:

CAUTION, TO AVOID SERIOUS INJURY:

For maximum safety protection in all types of crashes, you must always wear your safety belt.

Do not install rearward-facing child seats in any front passenger seat position.

Do not sit or lean unnecessarily close to the air bag.

Do not place any objects over the air bag or between the air bag and yourself.

See the owner's manual for further information and explanations.[5]

This section further states that "[n]o other information shall appear on the same side of the sun visor to which the label is affixed. Except for an air bag alert label placed on the visor pursuant to S4.5.1(c) of the standard, no other information about air bags or the need to wear seat belts shall appear anywhere on the sun visor."[6]

---

4. Citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), plaintiffs claim that implied preemption analysis is unnecessary and would be a disservice to the legislative branch. In *Cipollone*, the Court stated:

When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority," "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation.

*Id.* at 517, 112 S.Ct. 2608 (citations omitted). Since *Cipollone*, however, the Supreme Court appears to have altered its position on the need for an implied preemption analysis. In *Freightliner Corp. v. Myrick*, 514 U.S. 280, 289, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), the Court held that, "[a]t best, *Cipollone* supports an infer-

ence that an express preemption clause forecloses implied pre-emption; it does not establish a rule."

Given the unsettled state of the law, I believe "it is better to 'take the jurisprudentially safer course and proceed with an implied preemption analysis.'" *Minton*, 80 Ohio St.3d at 76, 684 N.E.2d 648 (citing *Hernandez–Gomez v. Leonardo*, 185 Ariz. 509, 917 P.2d 238, 243 (1996)).

5. Defendant has not argued that plaintiffs' claim of inadequate warning based on the information provided in the owner's manual is preempted by federal law. Indeed, such argument would be an uphill battle, as the federal requirements regarding content of the owner's manual, as opposed to the sun visor warning, appear to give manufacturers a great deal of flexibility. *See* 58 Fed.Reg. 46561, 46564 (Sept. 2, 1993).

6. Plaintiffs do not dispute that defendant fully complied with the air bag warning requirements of FMVSS 208.

These regulations leave car manufacturers with very little flexibility: they must (1) affix an air bag warning label to only one side of the sun visor; (2) use only the mandatory warning language on the sun visor air bag warning label; and (3) keep the sun visor free of any other information about air bags or the need to wear seat belts. Thus, if plaintiffs claimed that defendant should have used different or additional language on the sun visor air bag warning label, that claim would be impliedly preempted because it would have impossible for defendant to change the sun visor warning and still be in compliance with federal law. *See Macko v. Ford Motor Co.,* Case No. 4:96CV349 (N.D.Fla. Mar. 17, 1998) (contention that defendant affixed inadequate air bag warnings to sun visors in rented car was impliedly preempted by federal law because warning labels contained precise language mandated by federal law).

Plaintiffs have stated, however, that they are not claiming that a different warning should have appeared on the sun visor, but that a specific warning should have appeared in other, more obvious locations in the vehicle. Such claim, they argue, is not impliedly preempted by the Safety Act, for it would not have been impossible for defendant to place warning labels elsewhere in the car, nor would it have interfered with congressional policy to do so. This argument was not addressed in *Macko,*[7] and, as far as I can tell, has not been addressed by any other court.[8]

Defendant asserts, on the other hand, that plaintiff's inadequate warning claim interferes with the policies and purposes of the National Highway Traffic Safety Administration (NHTSA) in prescribing the standards reflected in FMVSS 208. According to defendant, in mandating the specific language of the air bag warning and requiring that

they be placed on sun visors, NHTSA wanted to (1) "ensure that vehicle occupants have the basic information necessary to receive the maximum safety protection from their airbags" and (2) avoid "information overload" which would "dilut[e] the impact of the most important information" about the air bag system. 58 Fed.Reg. 46554-55.

█ It appears that NHTSA was concerned with not overdoing the content of the air bag warning labels, fearing that vehicle occupants would not take heed of important information buried between the lines of less important information. Mandating that defendant place alternative, more specific labels elsewhere in their vehicles would, defendant argues, frustrate this clear policy. I agree: requiring that manufacturers provide more detailed air bag warning labels that include information that NHTSA did not consider to be of the utmost importance is likely to lead vehicle occupants to disregard the most important information or even the warning label altogether, in derogation of NHTSA's anti-dilution policy. Therefore, to the extent that plaintiffs claim that alternate warning labels should have been placed in other locations in the car, that claim is impliedly preempted, because requiring such alternate warnings would frustrate the federal policy of ensuring that important warning information is not diluted by information overload.

█ To the extent that plaintiffs claim that the federally-required sun visor warning should have also been placed elsewhere in the car, however, I do not believe that claim is impliedly preempted by the Safety Act. Absent a claim that the car should have been plastered with the mandatory air bag labels, a claim which, even if plaintiffs were to make, would appear to be easily rebuttable, it would not have frustrated the anti-dilution policy to have repeated the same warning at other,

7. While it appears from defendant's exhibits that the plaintiffs in *Macko* did argue that additional air bag warning labels should have been placed elsewhere in the car, those claims appear not to have been addressed in Judge Stafford's summary judgment order. Rather, Judge Stafford only discusses only the plaintiffs' contention that inadequate air bag warnings were affixed to the sun visors in their rental car. *Id.* at 4.

8. Defendant states that more than 160 courts, including the Northern District of Ohio, have found that state law claims that conflict with the Safety Act's provisions are impliedly preempted. *See* Doc. 42 at 13 n. 7. These cases overwhelmingly involve the conflict between "no air bag" claims and Congress's clear policy that manufacturers should be able to choose the type of restraint system they use. As such, they are not persuasive in this scenario.

perhaps more obvious, locations in the car, such as the steering wheel or the dashboard. In that case, the most important, basic information mandated by federal law may have been more visible and thus more likely to have been read, understood, and heeded by vehicle occupants.

### 3. Proximate Cause

■ To establish a prima facie case of inadequate warning, a plaintiff must demonstrate that his or her injury proximately resulted from the defendant's breach of its duty. *Hanlon v. Lane,* 98 Ohio App.3d 148, 152, 648 N.E.2d 26 (1994) (*citing Freas v. Prater Constr. Corp., Inc.,* 60 Ohio St.3d 6, 8–9, 573 N.E.2d 27 (1991)).

■ Defendant claims that, because Mrs. Fisher did not remember ever reading the air bag warning label or the owner's manual's air bag warnings, there is no evidence that, had the warnings been different, she would not have been injured. This argument must fail, however, because defendant overlooks the fact that the core of plaintiffs' claim is that the warning labels were inconspicuous and, therefore, not likely to be read by vehicle occupants. Further, Mrs. Fisher stated that if there had been an air bag warning label in a more conspicuous place, a claim which I have found is not preempted by federal law, she would have seen and read it and taken steps to protect herself.[9] (B. Fisher Aff. at ¶¶ 8–9). Reading this label would have directed her to the owner's manual, which could have provided her with more specific warnings regarding risks to small-statured people. Therefore, plaintiffs have demonstrated a triable issue as to whether the inadequate warning proximately caused their injuries.

In accordance with the above, defendant's motion for summary judgment as to the issue of inadequate warning is granted in part and denied in part.

### B. Defect Claim

Plaintiffs' second claim is that the defective design of defendant's air bag system proximately caused their injuries. Specifically, plaintiffs claim that the 1996 Sable was defectively designed so as to permit front-seat occupants to position themselves dangerously close to a powerful air bag, and that defendant knew about this danger. Defendant moves for summary judgment on this claim, arguing that there are no genuine issues of material fact as to the existence of a design defect or proximate cause.

■ In Ohio, a design defect may be demonstrated under the consumer-expectation test or the risk-benefit test. *State Farm Fire & Cas. v. Chrysler,* 37 Ohio St.3d 1, 7, 523 N.E.2d 489 (1988). Under the consumer-expectation test, a product may be proven to be in a defective condition if (1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner;[10] (2) the claimed defect was present when the product left the manufacturer; and (3) the claimed defect proximately caused the claimed injuries. *Id.* at 6–7, 523 N.E.2d 489. The risk-benefit test requires that the plaintiff prove, in lieu of failure to meet consumer expectations, that the risks of the design outweigh its benefits. *Cremeans v. International Harvester Co.,* 6 Ohio St.3d 232, 234, 452 N.E.2d 1281 (1983).

■ Defendant first argues that plaintiffs have failed to produce any evidence supporting their claim that the 1996 Mercury Sable's air bag system was defectively designed because their expert cannot pinpoint the specific component or components that are defec-

9. It can be inferred that reading the warning label would have led Mrs. Fisher to the owner's manual, as the label is required to so direct readers. As noted above, defendant has not argued that claims as to the provisions of the owner's manual are preempted by federal law, and, therefore, plaintiffs' claims that the manual was inadequate to warn are preserved.

10. Under the consumer-expectation standard, evidence of unsafe, unexpected product performance is sufficient to infer the existence of a

product defect. *State Farm,* 37 Ohio St.3d at 7, 523 N.E.2d 489. Further, the determination of whether a product is more dangerous than an ordinary person would expect is generally a question of fact which does not require expert testimony. *Porter v. Gibson Greetings, Inc.,* 1997 WL 761851, *3 (Ohio App. 2 Dist.1997) (*citing Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.,* 107 Ohio App.3d 218, 225, 668 N.E.2d 529 (1995)).

tive. It claims that plaintiffs' argument is therefore based on their speculation that, because the air bag deployed in Mrs. Fisher's accident and she sustained injury, the design of the air bag system must have been defective. I disagree. A fair reading of Broadhead's declaration and deposition testimony indicates that it was the defective combination of the air bag restraint system and the extended seat track that caused Mrs. Fisher's injuries. (Broadhead Dec. at ¶¶ 10–11). That he did not further specify any problems with the air bag system and was unfamiliar with design specifications for the vehicle are considerations to be weighed by the jury, not reasons for granting summary judgment to defendant. Because the record demonstrates that Ford knew about the dangers posed to short-statured persons by its air bag system, and that other injuries and fatalities had occurred in the past, plaintiffs' claims that the Sable's air bag system was defective are more than merely speculative.

Defendant also argues that plaintiffs have not demonstrated that a practical and technically feasible alternative was available to it, as required by O.R.C. § 2307.75(F).[11] Broadhead opined, however, that both dual inflator systems[12] and dual threshold systems[13] were available when the 1996 Mercury Sable was designed and manufactured and were used by Mercedes Benz and BMW. (Broadhead Dec. at 5–6; Broadhead Dep. at 164–65). Broadhead also testified that General Motors used a dual threshold system as a passenger side air bag as early as 1975. (Broadhead Dep. at 217).

Defendant complains, nevertheless, that Broadhead has not personally tested these alternative designs, reviewed Ford's design specifications, or performed any tests on the air bag system in plaintiffs' car, and, therefore, that his opinion is unsubstantiated and insufficient to create a triable issue of fact for the jury. I disagree. Broadhead's background demonstrates that he has had extensive experience in testing and developing air bag systems, including a dual threshold prototype. The record reveals that he reviewed the traffic collision report from Mrs. Fisher's accident, photographs of her vehicle, and her medical records in rendering his opinion that the air bag system employed in the Mercury Sable was defective and dangerous. While this testimony may be insufficient to carry plaintiffs' burden of proof as to alternative designs, it is adequate to create an issue of fact as to the defectiveness of defendant's air bag system. *See Evanoff v. Grove Manufacturing Co.*, 99 Ohio App.3d 339, 346, 650 N.E.2d 914 (1994) (summary judgment inappropriate where, even though expert had not conducted actual tests on allegedly defective design, he testified that, based on his experience, an alternative would have been feasible both mechanically and financially).

### Conclusion

For the foregoing reasons, it is hereby

**ORDERED THAT** defendant's motion for summary judgment (Doc. 42) be, and same hereby is, granted in part and denied in part.

**So ordered.**

---

**11.** O.R.C. § 2307.75(F) provides:

A product is not defective in design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product, unless the manufacturer acted unreasonably in introducing the product into trade or commerce.

**12.** According to plaintiffs, a dual inflator system provides inflation commensurate with the speed of the collision and the severity of the accident.

**13.** According to plaintiffs, a dual threshold system deploys dependent on whether a vehicle occupant is seatbelted.