CRISLIP ET AL., APPELLEES, *v.* TCH LIQUIDATING COMPANY [F.K.A. XXTH CENTURY HEATING AND VENTILATING COMPANY], APPELLANT.

[Cite as Crislip *v.* TCH Liquidating Co. (1990), 52 Ohio St. 3d 251.]

252

(No. 89-447—Submitted March 7, 1990—Decided July 18, 1990.)

*Blakemore, Rosen, Meeker & Varian Co., L.P.A.,* and *Donald S. Varian, Jr.,* for appellees.

*Brown, Bartunek & Worthing* and *Donald E. Worthing,* for appellant.

WRIGHT, J. The Crislips, plaintiffs-appellees, do not allege a design or manufacturing defect in the Timber Iron Furnace Caddy. Rather, they claim that the failure of defendant-appellant, TCH Liquidating Company, to adequately warn them of the danger of carbon monoxide poisoning rendered the Timber Iron unreasonably dangerous. This court has adopted Section 402A of 2 Restatement of the Law 2d, Torts (1965) 347, along with Comment *j,* at 353, which allows a cause of action in strict liability when failure to warn renders a product unreasonably dangerous. Thus, we agree with the court of appeals that the trial court committed error in directing a verdict for defendants on the strict liability cause of action. An individual injured by a known dangerous product may prosecute a strict liability claim arising from allegations of inadequate warning. However, because the trial court's refusal to let the jury decide the strict liability question was harmless error

under the facts of this case, we reverse the court of appeals' decision that the directed verdict be reversed and the cause remanded for trial on the strict liability claim, and we reinstate the judgment of the trial court.

Strict liability for defective products in Ohio follows the formulation in Section 402A of the Restatement, *supra. Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, paragraphs one and two of the syllabus. Section 402A provides as follows:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

One of the reasons given in *Temple* for approving Section 402A was that "* * * the Restatement formulation, together with its numerous illustrative comments, greatly facilitates analysis in this area * * *." *Id.* at 322, 4 O.O. 3d at 469; 364 N.E. 2d at 271. Comment *j* pertains to failure to warn and provides in pertinent part:

"*Directions or warning.* In order

to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.
"* * *

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Thus, a product may be unreasonably dangerous and strict liability may apply as the result of the lack of an adequate warning even though the product has no design or manufacturing defect. This is just what the plaintiffs here alleged, but the trial court granted defendants' directed verdict motion, erroneously stating that Ohio does not recognize an action in strict liability for failure to warn.

Appellant TCH argues that in *Temple, supra,* this court ruled that a cause of action for failure to warn sounds in negligence but not in strict liability, quoting the following sentence from that case: "It is, however, apparent that the rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a standard of care, and any tort resulting from the failure to meet this duty is, in essence, a negligent act. * * *" *Temple, supra,* at 325, 4 O.O. 3d at 470-471, 364 N.E. 2d at 272-273. Taken out of context, this statement seems to limit a plaintiff alleging failure to warn to an action in negligence and to prohibit such a plaintiff from bringing the action in strict liability.

Understood in its context, however, the quoted statement does not disallow a strict liability action for failure to give an adequate warning. The plaintiffs in *Temple,* like the Crislips, argued only that the product which caused injury "* * * was defective in that it was unreasonably dangerous and was placed in the hands of the user, Mrs. Temple, without adequate warning. * * *" *Id.* at 321, 4 O.O. 3d at 468, 364 N.E. 2d at 270. We noted in the next sentence that this cause of action was premised on Comment *j,* then quoted from Comment *j,* and concluded the paragraph by approving Section 402A. *Id.* at 321-322, 4 O.O. 3d at 468-469, 364 N.E. 2d at 270-271. Nowhere in *Temple* did we disapprove of, or refuse to adopt, Comment *j.*

We did not address the applicability of Comment *j* to the facts of *Temple* because the plaintiffs' strict liability claim failed on two other grounds: two defendants were absolved because the product had undergone a substantial change after leaving their hands, thus falling outside the scope of Section 402A (see 402A[1][b]); and the other defendant had manufactured a component part, but had not overseen its in-

tegration into the machine, which this court found not to give rise to strict liability. *Id.* at 323-325, 4 O.O. 3d at 469-470, 364 N.E. 2d at 271-272.

The plaintiffs were precluded from pressing their strict liability claim in *Temple* not because they alleged a cause of action that we categorically refuse to recognize but, because of other factors peculiar to their case. Having explained why the strict liability claim had to fail, we then observed that another tort theory was available to the plaintiffs: negligent failure to warn. Thus, when we wrote that the failure to meet the duty to warn "* * * is a rule fixing a standard of care, and any tort resulting from the failure to meet this duty is, in essence, a negligent act * * *," we did not mean that negligence is the exclusive cause of action for failure to warn, but rather that a negligence action is an *alternative* to a strict liability cause of action for failure to warn. Plaintiffs may plead both negligence and strict liability for failure to warn.

TCH also urges us to accept the distinction, proposed in *Krosky, supra,* between failure to provide any warning at all and failure to provide an adequate warning. Although *Krosky* correctly concludes that "* * * when a product is unreasonably dangerous and has an inadequate warning, an injured user may prosecute an action based upon strict liability in tort * * *," *id.* at 12, 20 OBR at 13, 484 N.E. 2d at 707, the Court of Appeals for Lorain County also stated that "[h]ad [defendant] Fruehauf attempted to notify the user of the potential danger of coming into contact with electrical wires by providing a warning, negligence principles would be appropriately applied. Here, however, the defective condition is the result of the lack of any warning on an unreasonably dangerous product and

the principles of strict liability are applicable." *Id.* This is a distinction without a difference, and it is inconsistent with our adoption of Section 402A, including Comment *j*. An inadequate warning may make a product as unreasonably dangerous as no warning at all; there is no reason to preclude a plaintiff from pleading and proving strict liability just because some warning, however inadequate, accompanies a product.

The trial court's charge to the jury included the following instructions on adequacy of the warning:

"* * * [The plaintiffs] are all saying that the Defendant was negligent and that he failed to warn or failed to adequately warn the Plaintiffs of the dangers of this device, * * * and that that failure to do so was a violation of ordinary care. The Plaintiffs say that an ordinarily cautious and careful and prudent manufacturer would have included such warning to a consumer of the product. * * *" The judge also summarized TCH's defense: "It says we were not negligent, what we did was everything that an ordinarily cautious and prudent manufacturer would have done under the circumstances * * *. It says that the manual instructions were adequate and that if the installer and the consumer, Terry Crislip, had followed those instructions, the injury or damages would not have resulted. * * *"

These jury instructions employ the language of negligence, referring as they do to the duty of a cautious, prudent manufacturer. The principles applicable to the Crislips' negligence action are found in Section 388 of the Restatement of Torts 2d, *supra*, at 300-301. Comment *g* to Section 388 elaborates on the supplier's duty with regard to warnings:

"* * * to *exercise reasonable care* to give to those who are to use the

chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used." (Emphasis added.) *Id.* at 304.

Strict liability analysis focuses instead on the consumer's expectations. According to Comment *i* to Section 402A, to be unreasonably dangerous, "[t]he article sold must be *dangerous to an extent beyond that which would be contemplated by the ordinary consumer* who purchases it, with the ordinary knowledge common to the community as to its characteristics." (Emphasis added.) *Id.* at 352. Commentators and courts have long recognized that both approaches deal with the same question of foreseeability of harm, and are therefore "* * * two sides of the same standard." *Welch* v. *Outboard Marine Corp.* (C.A. 5, 1973), 481 F. 2d 252, 254. "[A] manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it." *Phillips* v. *Kimwood Machine Co.* (1974), 269 Ore. 485, 493, 525 P. 2d 1033, 1037. See, also, Prosser & Keeton, Law of Torts (5 Ed. 1984) 697, Section 99; 1 Madden, Products Liability (2 Ed. 1988) 357-384, Sections 10.1-10.3.

The jury instructions in this case employ language appropriate to strict liability as well as negligence when they speak of the adequacy of the warning in its effect on the behavior of the consumer, Terry Crislip. Under either a negligence or strict liability theory, the important factors for the jury to consider were whether the defendant knew or should have known of the danger and whether the warning allowed the consumer to use the product safely. In a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn.[1] Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning. The trial court's error in refusing to allow the strict liability claim to go to the jury was harmless in

---

[1] Section 402A of the Restatement of Torts 2d does not require that the plaintiff prove the manufacturer knew or should have known that the product was unreasonably dangerous. However, courts have refused to hold defendants strictly liable in the absence of such knowledge or reason to know. The New Jersey Supreme Court held in *Beshada* v. *Johns-Manville Products Corp.* (1982), 90 N.J. 191, 447 A. 2d 539, that a manufacturer could be strictly liable for harm caused by a product even when it could not have known of the danger at the time of manufacture. This case has not generally been followed. Courts instead include foreseeability in their analysis of strict liability. This position finds support in an example in Comment *j* to Section 402A, at 353: "Where * * * the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, *the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. * * *"* (Emphasis added.)

this case and does not require reversal and a remand. The jury in this case did not find the warning on the Timber Iron to have been inadequate. The opposite was true. The jury has already decided the issue. We say this because of the similarities between causes of action in negligence and strict liability for failure to warn adequately, and because here the jury instructions focused on the warning itself.

We do not mean to suggest that a cause of action for negligent failure to warn or warn adequately is identical to one brought under strict liability. One important difference concerns the availability of comparative negligence as a defense in the two types of actions. A finding of comparative negligence by the plaintiff in a cause of action for negligent failure to warn or warn adequately reduces the amount of damages awarded, or bars recovery completely if the plaintiff is found to be more at fault than all parties from whom he seeks recovery. R.C. 2315.19. However, comparative negligence cannot be raised as a defense to a cause of action in strict liability. *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 31 OBR 559, 511 N.E. 2d 373.

Generally, a plaintiff's attorney will plead both negligence and strict liability when drafting a complaint alleging failure to warn. Should a complaint plead only strict liability for failure to warn and not negligent failure to warn, however, a deserving plaintiff would be unable to advance his strict liability claim if Ohio did not recognize such a cause of action. This elevation of form over substance in pleading would lead to inequitable results.

The Crislips ask us to reverse the court of appeals' holding that the trial court was correct in directing a verdict for Ytsma and Sterling Metalcrafts on the issue of successor liability. They also ask us to reverse the court of appeals' holding that the trial court properly directed a verdict for TCH on the issue of negligent selection and training of the installer. We agree with the court of appeals' application of *Flaugher* v. *Cone Automatic Machine Co.* (1987), 30 Ohio St. 3d 60, 30 OBR 165, 507 N.E. 2d 331, to the issue of successor liability and affirm the court of appeals. We also see no reason to disturb the court of appeals' ruling on the negligent selection and training issue, based as it was on a lack of direct evidence of negligence.

Because the directed verdict on the issue of strict liability for failure to warn constituted harmless error, we reverse the judgment of the court of appeals on that issue, but affirm as to the issues of successor liability and negligent selection and training.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., BROGAN, HOLMES, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., dissents.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for SWEENEY, J.