NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0496n.06

No. 12-3908

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 16, 2013*
DEBORAH S. HUNT, Clerk

LINDA BUCK and DANIEL BUCK,

 *Plaintiffs-Appellants*,

v.

FORD MOTOR COMPANY and JOHN DOE, INC.,

 *Defendants-Appellees*.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**O P I N I O N**

BEFORE: BOGGS and COLE, Circuit Judges; QUIST, District Judge.[*]

COLE, Circuit Judge. Linda Buck was injured when, J.D. White, drove a 1999 Ford Expedition through the front window of a bakery and pinned her to the back wall. Plaintiffs-Appellants, Linda and Daniel Buck ("Bucks"), allege that the vehicle's cruise control system was defectively designed causing the car to accelerate uncontrollably. The district court granted summary judgment to Ford Motor Company on the Bucks' claims under Ohio law for defective product design and inadequate warning. For the following reasons, we affirm the judgment of the district court.

I.

On April 27th, 2006, J.D. White was pulling into a parking space at Nickles Bakery in his 1999 Ford Expedition as Linda Buck shopped inside. Unexpectedly, the Expedition accelerated forward through the window of the shop, pinning Linda Buck to the back wall.

---

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

After the accident, White stated on several occasions that he was unsure if he had pressed the brake or the gas pedal at the time of the accident. Later, however, he became sure that he had put his foot on the brake. In his deposition, White also admitted to being a "two-footed driver," using one foot for the gas and one for the brake. White, a 67-year-old man who walked with a cane, never drove again after the accident pursuant to his daughter's request and his doctor's orders.

The Bucks filed suit in April 2008 in the Court of Common Pleas, Lucas County, Ohio alleging under Ohio law that the Ford Expedition driven by White was defectively manufactured causing it to accelerate uncontrollably. They furthermore argued that Ford was liable for failing to warn Ms. Buck of the Expedition's dangerous condition. Ford removed the case to federal court on the basis of diversity jurisdiction.

The district court granted summary judgment to Ford. The court first addressed the defective product design claim under a *res ipsa loquitur* theory. It held that the Bucks did not have a meritorious claim under *res ipsa* because an ordinary course of events—such as a foot on the gas—could result in vehicle acceleration. Therefore, the acceleration itself was not evidence of negligence.

The court then held that the Bucks could not make out a defective product design claim absent expert testimony.[1] The Bucks argued that by offering evidence of similar incidents of sudden acceleration with Ford cars in the United Kingdom ("UK"), they had obviated the need for expert

---

[1] The Bucks have an accident reconstruction expert, Dr. William D. Berg; however, he offers no technical expertise regarding cruise control defects or electromagnetic interference, which form the basis of the Bucks' defective design claim.

evidence. The district court, however, held that the UK incidents were not "substantially similar" to the accident in question as required under Ohio law. The UK incidents were therefore inadmissible. Without an expert, the Bucks lacked evidence to support their claim.

Finally, the district court held that the Bucks failure-to-warn claim failed because Ford had no duty to warn Linda Buck of any dangerous condition or risk to her safety.

The Bucks brought a timely appeal.

## II.

We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Harris v. City of Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Williams*, 186 F.3d at 689 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Bucks now appeal the district court's grant of summary judgment on both their defective product design claim and inadequate warning claim. We address them both in turn.

## A.

In order to establish a defective product design claim under Ohio law a plaintiff must show "(1) there was, in fact, a defect in the product manufactured and sold by the defendant; (2) such

defect existed at the time the product left the hands of the defendants; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 523 N.E.2d 489, 493 (Ohio 1988) (citations and internal quotations omitted).

The district court granted summary judgment to Ford on the Bucks' defective product design claim, holding that because the Bucks did not have a technical expert to support their claim, they could not prove causation under Ohio law. On appeal the Bucks make the same argument they made in the district court: that "a manufacturer's own documents may supply evidence of general causation, obviating the need for an expert," and that the documentation of similar accidents with Ford cars in the UK is sufficient to subject Ford to liability in the instant case and provide evidence of causation. (Buck Br., p. 39.)

An expert is not always required to make out a defective product design claim. *Atkins v. Gen. Motors Corp.*, 725 N.E. 2d 727, 733 (Ohio Ct. App. 1999) (holding that circumstantial evidence is sufficient to prove a design defect if the product is not complex or technical). Ford argues that even if the UK evidence is admissible, an expert is required in this case because the Bucks' claim regarding the Expedition's cruise control system is complex and technical. *See Straub v. CGC Sys., Inc.*, No. 20009-P-0044, 2010 WL 1177339, at * 5 (Ohio Ct. App. March 26, 2010) (holding that an expert is not necessary if a claim does not present complex technical issues).

In order for the UK incidents to be admitted as evidence under Ohio law the Bucks must demonstrate that the accidents are "substantially similar" to the accident in the instant case. *Renfro v. Black*, 556 N.E.2d 150, 154 (Ohio 1990). The district court held that the UK incidents did not meet this test and were therefore inadmissible. We review the district court's finding that the UK

incidents are not substantially similar under an abuse of discretion standard. *Vogel v. Wells*, 566 N.E.2d 154, 158 (Ohio 1991). "Abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable." *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 66 (Ohio 2004) (internal quotations and citation omitted).

The Bucks argue that the district court rested its decision on a flawed understanding of the facts and therefore abused its discretion. "The trial court found that these incidents were not [admissible] because . . . they allegedly 'did not involve any allegations of cars at rest or near-rest accelerating from those positions.'" The Bucks are correct, and Ford does not dispute, that this was a factual error by the district court. There were, in fact, reports of cars "at rest or near rest" included in the UK documents.

The court nevertheless did not abuse its discretion in finding no substantial similarity between the UK incidents and Linda Buck's accident. The UK incidents were divided into three different incident groups based on the behavior of the cars. The Bucks' own accident reconstruction expert, Dr. Berg, admitted that the accident in the instant case did not match any of those three categories. In light of the testimony of the Bucks' own expert, this court cannot conclude that the district court abused its discretion in finding that there was no substantial similarity between the UK incidents and the accident at issue in this case.

Because we affirm the district court's finding that there is no substantial similarity, the UK incidents are inadmissible. Since the Bucks have no technical expert, they therefore have no other evidence on which to rely in order to support their defective product design claim.

B.

The Bucks also appeal the district court's dismissal of their failure-to-warn claim. The district court held that Ford had no duty[2] to warn Linda Buck of any dangerous condition in the Ford Expedition. We agree.

A "manufacturer does not breach its duty to warn . . . until the company knew or should have known of a particular risk through the exercise of ordinary care." *Grover v. Eli Lilly & Co.*, 591 N.E.2d 696, 700 (Ohio 1992). Furthermore, the plaintiff must show "that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." *Crislip v. TCH Liquidating Co.*, 556 N.E.2d 1177, 1182-83 (Ohio 1990). Here, the Bucks are not even able to demonstrate that the Expedition was dangerous, let alone take the additional step of demonstrating that Ford knew or should have known of such danger. Therefore, Ford had no duty to warn and the district court properly granted summary judgment on this claim.

III.

For the foregoing reasons we affirm the judgment of the district court.

---

[2]Although the district court discussed both duty and standing, ultimately its ruling was based on duty.